```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

```
UNITED STATES OF AMERICA      :    CRIMINAL ACTION
                              :
          v.                  :
                              :
THOMAS VESSELS                :    NO. 07-475
```

MEMORANDUM AND ORDER

McLaughlin, J.                               March 24, 2008

    Thomas Vessels has been indicted for possessing a
firearm after he was convicted of a crime punishable by
imprisonment for a term exceeding one year.  He moves to suppress
the physical evidence of the firearm as well as certain
statements he is alleged to have given to the police.  The Court
held a hearing on March 7 and March 12, 2008.  The Court will
deny the motion.


I.   Findings of Fact

    On the night of May 27, 2007, Officers Michael Barone
and Phil Degliomini of the Cheltenham Township Police Department
were working in plain clothes as partners.  They were in an
unmarked police car and they both had their identification badges
hanging from a chain around their necks.

    At approximately 9:49 p.m., they drove into the rear of
a shopping center containing a Walgreens and a KFC.  Officer
Barone was driving and Officer Degliomini was in the passenger

seat.  There was a brick wall in the area with dumpsters on the other side of the wall and beside the wall.  It was a very rainy night but there were numerous light poles throughout the parking lot.

There was a difference in the testimony of the two officers concerning where the defendant was standing when they first saw him.  Officer Degliomini testified that the defendant was standing against a dumpster with his back to their car.  The defendant appeared to be urinating.  Officer Barone testified that the defendant was standing approximately in the center of a concrete wall next to the dumpster.  Officer Barone also testified that the defendant appeared to be urinating.  The Court does not need to decide whether the defendant was standing in front of the concrete wall or the dumpster because it does not change the legal analysis.

Both officers saw another male in the area as well as a retirement bus that transports people from a retirement home in the Ambler area.  The second male walked quickly around the bus and out of the view of the police.  They had no further contact with him.

Officer Barone had his headlights on and they were shining on the back of the defendant.  The police were about ten to fifteen feet from the defendant.  Officer Barone opened the window as he was approaching and by the time he came to a stop,

2

the window was completely open.  He said to the defendant, "Yo, what are you doing?"  Mr. Vessels turned around to look at him. Officer Barone then said, "Police, stay right where you're at." Mr. Vessels fled on foot up an embankment next to the concrete wall.  Neither officer made any physical contact with the defendant before he ran up the embankment.  Officer Barone did not get out of the car.  Officer Degliomini made no statements to Mr. Vessels and did not get out of the car.

        After Mr. Vessels ran up the embankment, Officer Barone pulled his car out onto Limekiln Pike and made a left on Limekiln Pike and another immediate left into the parking lot of Walgreens.  The officers never lost sight of Mr. Vessels.  In running, Mr. Vessels tripped over a cement barrier and fell to the ground.  Officer Barone could hear some sort of metal object hit the ground and slide across the ground.  They were between 50 and 60 feet away from Mr. Vessels.  Officer Barone could not tell what the object was.  Officer Degliomini saw what appeared to be a handgun come out of the defendant's waist area and hit the ground.

        Mr. Vessels immediately jumped up and continued to run. He ran in the direction of Cheltenham Avenue as if he was going to run across it.  Officer Degliomini then got out of the car to chase Mr. Vessels on foot.  Officer Barone went after Mr. Vessels in the car.  Mr. Vessels ran in a south direction between the

3

buildings towards the rear alley way.  Officer Barone went west on Cheltenham Avenue and made a right.  He made a left at the traffic light at Limekiln Pike and Cheltenham Avenue and then made another immediate left onto the rear alley way and continued in an east direction down the alley way.

Officer Barone drove past his partner and drove the car right up along the side of Mr. Vessels.  The officer drove the front right corner of the car up to the side of a fence to block any further pathway of Mr. Vessels.  Officer Barone jumped out of the vehicle and ran to the rear.  He yelled to Mr. Vessels, "Police. Get down on the ground.  Get down on the ground."  Mr. Vessels did not comply.  The defendant lowered his shoulder and ran towards him and Officer Degliomini.  They attempted to take Mr. Vessels down to the ground but were not successful.  They got into a wrestling struggle with him and they kept him pinned to the rear trunk of the vehicle until more officers arrived.  The defendant did not try to strike either of them.  He was just trying to get away.  It took two or three other officers in addition to the two of them to hold him down and get him handcuffed.

While the two officers had Mr. Vessels pinned to the rear trunk of the car, Mr. Vessels blurted out "I can't go away, I can't go away."  The police placed the defendant in the rear of one of the marked police cars when they handcuffed him.

4

The officers then went back to the Walgreens lot and found a handgun where the defendant fell .  It was about 15 minutes between the time the defendant tripped and they returned to the scene.  The officers secured the scene and called for the supervisor.  Their supervisor came over and photographed the gun where it was laying.  The gun was placed into an evidence bag.

At the station, Officer Barone tried to get personal information from Mr. Vessels.  When Officer Barone asked him his current address, he responded by saying, "Man, I know I'm going away for a long time.  I knew I shouldn't have done it.  We were just about to rob the KFC."  That statement was not in response to any questioning.  Officer Barone then asked the defendant for his current address.  Mr. Vessels asked if he was charging him with robbery.  The officer had not discussed robbery with the defendant prior to that time.  He told the defendant that he was not charging him with robbery.  Officer Barone told the defendant to stop talking and read him his <u>Miranda</u> rights.  The defendant said he understood them and waived his rights and agreed to speak.  After that, the defendant asked if Officer Barone could help him and if he could not help him, the defendant asked if he could talk to somebody that could help him.  The defendant said that he has cooperated before and "knows some stuff."

When he was in a holding cell, the defendant told Officer Barone that he had a child and wanted to know if there

5

was any way he could speak to his child on the phone because it may be the last time he talked to him for awhile.  Asking questions about personal information is standard booking procedure.

Mr. Vessels was housed in one of the cell block areas. Detective Diane Chiofolo was walking up and down the cell block area working.  Every time she walked by the defendant, he would shout at her to get her attention.  He said that he wanted to talk to her, that he had information.  "Time was of the essence." He did this about three or four times.  He said that he knew a female D.A., but could not remember her name, and that he had information and it was important to speak to someone.  Detective Chiofolo did not say anything to Mr. Vessels to elicit these statements.  She does not believe that anybody else did either. She told him that she was very busy.  She said that she was the only detective working that evening.  She told him that if she had an opportunity, she would try to sit down and talk with him but she could not guarantee it.  Detective Chiofolo got off three hours late and never got a chance to speak with Mr. Vessels.  She is not aware that anyone else interviewed him.

II.  <u>Discussion</u>

The defendant argues that his Fourth Amendment rights were violated when he was seized without articulable suspicion while standing at the wall/dumpster.  He argues that everything that happened after the initial seizure was the fruit of the poisonous tree.  The defendant also argues that whether or not his Fourth Amendment rights were violated, his Fifth Amendment rights were violated when he was interrogated before being given his <u>Miranda</u> rights.

The Court agrees with the defendant that the police did not have reasonable suspicion to seize the defendant when they saw him up against the wall/dumpster.  The Court finds, however, that the police did not seize the defendant at that time.

An individual is seized "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n.16 (1968).  "To constitute a seizure of the person, . . . there must be either the application of physical force, however slight, or, where that is absent, submission to an officer's 'show of authority' to restrain the subject's liberty." <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991); <u>see</u> <u>also</u>, <u>United States v. Valentine</u>, 232 F.3d 350, 358 (3d Cir. 2000), <u>cert. denied</u>, 532 U.S. 1014 (2001).

7

The Court concludes that there was neither the application of physical force nor submission to an officer's show of authority in this case.  There was no physical application of force.  The only show of authority by Officer Barone was to identify himself as a police officer and to tell the defendant to stay where he was.  Nor did the defendant submit to the show of authority.  He turned, looked at the officer, and ran.

When the police did seize the defendant after he fled from them, they had not only reasonable suspicion but also probable cause to arrest him because Officer Digliomini saw him drop a firearm.  That, coupled with his flight and his resistance of the officers, was probable cause to arrest.

The Court also concludes that there was no interrogation that resulted in the statements sought to be suppressed here.  The defendant volunteered or blurted the statements out to the police when he was first seized and then later in the police station.  The Court's decision that the statements should not be suppressed because of a constitutional violation does not mean that they are admissible during the trial of this case.  The Court will consider at a later time, after hearing from the parties, whether any of them is admissible under the Federal Rules of Evidence.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        :        CRIMINAL ACTION
                                :
              v.                :
                                :
THOMAS VESSELS                  :        NO. 07-475

ORDER

AND NOW, this 24th day of March, 2008, upon consideration of the defendant's Motion to Suppress Physical Evidence and Statements (Docket No. 16), the government's opposition thereto, and after a hearing on March 7 and 12, 2008, IT IS HEREBY ORDERED that said motion is DENIED for the reasons stated in the accompanying memorandum.

BY THE COURT:


/s/ Mary A. McLaughlin
MARY A. McLAUGHLIN, J.